**In re Robert C. LOHNES, Debtor.**

**Bankruptcy No. 5–82–01267.**

United States Bankruptcy Court, D. Connecticut.

Jan. 29, 1983.

James G. Verrillo, Zeisler & Zeisler, P.C., Bridgeport, Conn., for debtor.

Joseph Dimyan, Coury & Dimyan, pro se.

## MEMORANDUM AND ORDER ON CONTEMPT FOR VIOLATION OF AUTOMATIC STAY

ALAN H.W. SHIFF, Bankruptcy Judge.

On October 29, 1982, the debtor (Lohnes) filed a petition seeking relief under chapter 7 of the Bankruptcy Reform Act of 1978. On October 30, 1982, Joseph Dimyan (Dimyan) as the Committee of the Connecticut Superior Court for the Judicial District of Danbury, held a foreclosure sale of Lohnes's residence, located in Ridgefield, Connecticut. This matter comes before the court on Lohnes's motion for an order requiring Dimyan to show cause why he should not be found in contempt of court for having violated the provisions of 11 U.S.C. § 362(a).[1]

### I.

### BACKGROUND

A brief summary of the salient events leading to this proceeding will provide the necessary background for the analysis and resolution of the issue presented.

On August 30, 1982, the Superior Court for the Judicial District of Danbury entered a default against Lohnes in a foreclosure action instituted by Constitution Federal Savings and Loan Association. On the same date, Lohnes's motion for foreclosure by sale was granted, and Dimyan was appointed as Committee of the court to sell Lohnes's residential property. Dimyan thereafter made arrangements for an October 30, 1982 foreclosure sale.

On October 29, 1982, Lohnes filed a petition for relief under Chapter 7 of the Bank-

1. 11 U.S.C. § 362(a) in pertinent part provides ... a petition filed under section 301 ... of this title operates as a stay, applicable to all entities of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

ruptcy Code. On the same day, counsel for Lohnes advised Dimyan that the petition had been filed, and any foreclosure sale would be in violation of the automatic stay and subject Dimyan to contempt sanctions for violation of that court order.

On October 30, 1982, Dimyan conducted the foreclosure sale after advising all interested bidders that a bankruptcy petition had been filed by Lohnes, the bankruptcy court might declare the sale null and void, and they were bidding at their own risk.

In this proceeding, Dimyan filed a pleading which raised a variety of "special defenses," including a claim that Lohnes's prepetition request in state court for a foreclosure sale estopped him from instituting the present proceedings because "the rights of the Bankruptcy Estate are no greater than the rights of the Debtor."[2] Dimyan further claimed that at all relevant times he was "acting as Committee of the Superior Court . . . and as such all his actions are protected by Judicial immunity,"[3] the "Trustee of the Debtor's Estate is the only party who can cite in a State Court Committee for contempt,[4] and this court lacks jurisdiction.[5]

During the hearing on this matter, Dimyan abandoned essentially all of his claims [6] except that he was an agent of the superior court and his actions were not intended to thwart this court's order.

2. Amended Special Defenses, at ¶ 1.

3. *Id.* at ¶ 2.

4. *Id.* at ¶ 6.

5. *Id.* at ¶ 7.

6. Although Dimyan abandoned his claim that this court lacks jurisdiction it should be noted that the constitutionality of this court's jurisdiction was rejected by the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* —— U.S. ——, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) effective October 4, 1982. The effective date of *Marathon* was extended to December 24, 1982, and the jurisdiction of this court is now founded upon the Emergency Resolution For Administration of Bankruptcy System adopted by the United States District Court for the District of Connecticut on December 22, 1982.

7. An officer at a judicial sale is at most a "mere agent of the court," *see Raymond v. Gilman,*

## II.

### ISSUE

Does a postpetition foreclosure sale by a committee of the Connecticut Superior Court, in violation of the automatic stay provided by 11 U.S.C. § 362(a), constitute civil contempt?

## III.

### DISCUSSION

Dimyan's claim that he was cloaked with judicial immunity as the duly authorized agent of the state court in conducting the foreclosure sale is without merit. Judicial immunity does not extend to court personnel or to persons appointed by the court to accomplish ministerial tasks.[7] Clearly the scope of any agency as asserted by Dimyan would not include the violation of federal law.

As noted above, Dimyan next argues that since he did not intend to violate the automatic stay but rather to obey the state court's prepetition order, his actions in conducting a postpetition foreclosure sale, without first obtaining relief from the automatic stay,[8] did not constitute contempt of this court's order. I do not agree.

111 Conn. 605, 613, 151 A. 248, 251 (1930) (citation omitted) performing what is essentially a ministerial function. As such, he does not enjoy the immunity granted a judge acting in his judicial capacity. *Cf. Boddie v. State of Connecticut,* 286 F.Supp. 968, 971 (D.Conn. 1968), *rev'd on other grounds,* 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971).

8. 11 U.S.C. § 362(d) provides in pertinent part
On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

As the legislative history and innumerable courts and commentators have pointed out, the automatic stay is a principal foundation upon which debtor relief and to some extent creditor protection rests.

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and *all foreclosure actions.* It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.

H.R.Rep. No. 595, 95th Cong., 2d Sess. 340–42 (1977), *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5963, 6296–97, (emphasis added).

■ In the instant proceeding, there is no question but that the automatic stay was violated by the foreclosure sale. Dimyan seeks to excuse his action by claiming that he did not intend to violate federal law. Since, however, civil contempt serves a remedial purpose by either coercing a respondent into compliance with the court's order or compensating the complainant for losses sustained, willfulness in the offending party need not be shown for a finding of contempt. *Malcomb v. Jacksonville Paper Co.,* 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed.

599 (1948); *In re Worthing,* 24 B.R. 774, 9 B.C.D. 1135 (Bkrtcy.D.Conn.1982). It is sufficient that the "court order violated '[is] specific and definite'" and that the offending party has knowledge of the court's order. *Fidelity Mortgage Investors v. Camelia Builders, Inc.,* 550 F.2d 47, 51 (2d Cir.) (citations omitted), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1976), *reh. denied,* 430 U.S. 976, 97 S.Ct. 1670, 52 L.Ed.2d 372 (1977).

■ The court order violated in this instance was the automatic stay provided by 11 U.S.C. § 362(a) which, as noted above, is specific and definite. The automatic stay comes into existence and is effective upon the filing of the petition. It is undisputed that Dimyan was aware of the petition and the stay. In fact, counsel for Lohnes specifically warned Dimyan that if he conducted the foreclosure sale, he would be violating the automatic stay and be exposed to civil contempt sanctions.

It should be noted, however, that relief from the automatic stay is available, *inter alia,* for cause, including lack of adequate protection,[9] and if relief is sought, Congress has mandated a speedy hearing.[10] Here, instead of seeking appropriate relief, Dimyan went forward with the foreclosure sale and violated the stay.

## IV.

### ORDER

Accordingly, I find that Dimyan is in civil contempt for violating the order of this court. I further find that Lohnes suffered emotional distress as a result of the foreclosure sale of his residence. It is therefore

ORDERED that Dimyan pay Lohnes $50.00 plus attorney's fees of $150.00 and it is

**9.** *See* note 8 *supra; see also In re Gaslight Village, Inc.,* 8 B.R. 866, 870 (Bkrtcy.D.Conn. 1981)

**10.** 11 U.S.C. § 362(e) provides in pertinent part

Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsec-

tion (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending, or as a result of, a final hearing and determination under subsection (d) of this section ...

FURTHER ORDERED that Dimyan take no further action with respect to the subject property so long as the automatic stay is in effect or until he obtains relief therefrom.