**In re Shirley Mae ARMINIO, Debtor.**

**Shirley Mae ARMINIO, Plaintiff,**

v.

**COMMISSIONER OF MOTOR VEHICLES, Defendant.**

**Bankruptcy No. 5–83–00163.
Adv. No. 5–83–0520.**

United States Bankruptcy Court,
D. Connecticut.

March 16, 1984.

Francis X. Dineen, Joanne S. Faulkner, New Haven Legal Assistance Ass'n, Inc., New Haven, Conn., for plaintiff.

Joseph I. Lieberman, Atty. Gen., L.D. McCallum, Asst. Atty. Gen., State of Conn., Hartford, Conn., for defendant.

## MEMORANDUM AND ORDER

ALAN H.W. SHIFF, Bankruptcy Judge.

### I.

### BACKGROUND

This matter is before the court on the complaint of the debtor, seeking a determination that the defendant is in civil contempt for violating the automatic stay under Bankruptcy Code § 362(a) and this Court's July 12, 1983 order of discharge

pursuant to Bankruptcy Code § 524(a). The plaintiff further claims that she is entitled to damages under 42 U.S.C. § 1983 because the defendant deprived her of her civil rights, privileges or immunities under color of state law. As a consequence, the plaintiff seeks "appropriate orders" for contempt and violation of plaintiff's civil rights, including attorney's fees.

It should be observed at the outset that although the plaintiff's complaint seeks relief from the "defendant and his attorney", there is insufficient basis for including the defendant's attorney as a party in this proceeding. The defendant's attorney in this proceeding is the Attorney General of the State of Connecticut, Joseph I. Lieberman, by appearance dated November 1, 1983. The Attorney General was not named by the plaintiff in the caption of her complaint (see Fed.R.Civ.P. 10(a), Bankr.R. 7010). Neither the summons prepared by the Clerk's Office of this Court nor the bankruptcy cover sheet prepared by the plaintiff's attorney named the Attorney General as a defendant. Indeed each of those documents identified the Commissioner of Motor Vehicles as the sole defendant, and the plaintiff has made no attempt to amend. Assuming *arguendo* that the Attorney General of the State of Connecticut was served a copy of the plaintiff's complaint by the October 6, 1983 service upon "L.D. McCallum, AAG", it is apparent that he was served in his capacity as attorney for the Commissioner of Motor Vehicles. The mere reference to the defendant's attorney in the plaintiff's claim for relief is insufficient to make him a party to this proceeding.[1] Accordingly, any claim the plaintiff may have against the Attorney General of

the State of Connecticut will not be discussed further.

The facts necessary for a determination of the issues presented may be summarized as follows:[2]

On March 8, 1982, the plaintiff was involved in a motor vehicle accident. On August 8, 1982, the Connecticut Department of Motor Vehicles (DMV) suspended indefinitely the plaintiff's operator's license and registration privileges for failure to post a financial responsibility bond, pursuant to Conn.Gen.Stat. § 14–117(b); suspended indefinitely the plaintiff's operator's license for failure to file an accident report, pursuant to Conn.Gen.Stat. § 14–108; and suspended for 30 days the plaintiff's operator's license and motor vehicle registration for failure to provide the mandatory no fault insurance coverage for the operation of her vehicle.

On February 23, 1983, the plaintiff filed a petition seeking relief under Chapter 7 of the Bankruptcy Reform Act of 1978. By letter[3] dated March 1, 1983, the plaintiff's attorney, Joanne S. Faulkner of the New Haven Legal Assistance Association, advised the DMV as follows:

On or about March 8, 1982, my client was involved in an automobile accident. Ms. Arminio's license and registration privileges were suspended indefinitely for failure to deposit security for damages resulting from the accident. On February 23, 1983, my client filed a petition in bankruptcy in the United States Bankruptcy Court for the District of Connecticut. The claim of Metropolitan Property and Liability Insurance Company was properly listed in Schedule A–3.[4] I am enclosing copies of the Schedule A–3 for your records. I request that my

---

**1.** In theory, a contemnor's attorney might be held liable for abetting his client's violation of an injunctive order, but this Court is unaware of any authority to hold such an attorney in contempt when he is not made a party to the contempt proceeding. *Compare cf. In re Johns-Manville Corporation,* 26 B.R. 919 (Bkrtcy.S.D.N.Y.1983); *Matter of Carter,* 16 B.R. 481 (D.C.W.D.Mo.W.D.1981) *aff'd* 691 F.2d 390 (8th Cir.1982).

**2.** During the trial, the parties stipulated to certain facts including those stated herein, Plaintiff's Exhibit No. 5.

**3.** Plaintiff's Exhibit No. 7.

**4.** Plaintiff's Exhibit No. 8. The portion of plaintiff's Schedule A–3 lists, *inter alia,* Metropolitan Property & Liability Insurance Co., but it does not relate the schedule to the petition by plaintiff's name or case docket number.

client's license and registration privileges be immediately reinstated and that you notify Shirley Mae Arminio to that effect.

By communication dated March 30, 1983, the defendant's agent acknowledged receipt of the plaintiff's Schedule A–3 and requested Attorney Faulkner to send a "certificate of bankruptcy discharge." [5] In a subsequent discussion, memorialized by an April 20, 1983 letter [6], L.D. McCallum, Assistant Attorney General of the State of Connecticut, advised Attorney Faulkner that a copy of the discharge order was not necessary but that a copy of the plaintiff's petition should be sent to the DMV. Attorney McCallum further advised Attorney Faulkner that the plaintiff would also have to satisfy the DMV's no fault insurance regulations and pay a $10.00 fee each for the restoration of the plaintiff's license and motor vehicle registration privileges.

After further discussions and correspondence, during which it was disclosed that the plaintiff had lost her operator's license and no longer wished her motor vehicle registration privileges renewed, Attorney McCallum advised Attorney Faulkner that in order to have her operator's license restored, the plaintiff would have to send the DMV an affidavit detailing the circumstances under which it was lost, a $10.00 restoration fee, and a copy of her bankruptcy petition.[7] By letter dated June 14, 1983, but not received until July 19, 1983, Attorney Faulkner forwarded the affidavit and a $10.00 fee for restoration of the plaintiff's operator's license.[8] As of July 19, 1983, the defendant's demand that the plaintiff furnish a copy of her bankruptcy petition was the only unresolved condition for the restoration of the plaintiff's operator's license.

The plaintiff obtained a discharge by the July 12, 1983 order of this Court.[9] On or about November 7, 1983, the plaintiff's operator's license was restored.

## II.

## DISCUSSION

### A.

### CIVIL CONTEMPT

■ It is well settled that civil contempt rests upon findings that a specific and definite court order has been violated and that the offending party had knowledge of the court's order. *In re Lohnes*, 26 B.R. 593, 596 (Bkrtcy.D.Conn.1983), *citing Fidelity Mortgage Investor's v. Camelia Builders, Inc.*, 550 F.2d 47, 51 (2d Cir.1976) (citations omitted) *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977).

It is worthy of note that in *In re Sampson*, 17 B.R. 528, 8 B.C.D. 992 (Bkrtcy.D. Conn.1982), the defendant took the position that although it must refrain from suspending or retaining an operator's license after a debtor's discharge, predischarge enforcement of the State's financial responsibility law was excepted from the automatic stay by Code § 362(b)(4). This Court, however, observed that the intended purpose of the state law was to protect the pecuniary interests of judgment creditors rather than serve a broad public interest and accordingly held that Code § 362(b)(4) was inapplicable. *Sampson supra* 17 B.R. at 530–531; 8 B.C.D. at 993.

In this proceeding, the defendant contends that the DMV is entitled to a copy of the plaintiff's bankruptcy petition or other proof which satisfies its policy before it may be deemed to have "knowledge of the court's order." The defendant attempts to buttress that argument by claiming that a non-creditor state regulatory agency

---

**5.** Plaintiff's Exhibit No. 9.

**6.** Plaintiff's Exhibits Nos. 11 and 5 (paragraphs 10–12).

**7.** The Plaintiff's attorney had previously advised the DMV that the reason she had not surrendered her operator's license was because it had

been lost or stolen prior to the Department's suspension notification.

**8.** Plaintiff's Exhibit No. 5 (paragraphs 14–17).

**9.** Plaintiff's Exhibit No. 5 (paragraph 18), 16 and 17.

should have a right to enforce the State's financial responsibility law against bankruptcy debtors who fail or refuse to comply with DMV policy, requiring certain proof that a bankruptcy petition was filed.

While a federal court should exercise caution and restraint when its orders might intrude upon the policies and procedures of state regulatory agencies, an analysis of the evidence in this proceeding, in the context of the intended scope and spirit of the Bankruptcy Code, compels the conclusion that the defendant's position lacks merit.

What is involved here is a policy of the DMV to promote the efficient administration of the State's financial responsibility law. However, as observed in *Sampson, supra*, that law may not be enforced against a bankruptcy debtor. Accordingly, the defendant's policy, which has the effect of setting state standards for eligibility for relief under the Bankruptcy Code, is in violation of the exclusive power of Congress to enact uniform laws on the subject of bankruptcy. Art. I, § 8, cl. 4 of the United States Constitution.

The defendant may not dictate conditions precedent to a debtor's right to relief under the Bankruptcy Code. A debtor is entitled to that relief and if a "specific and definite" order of a court providing that relief were violated and the defendant had knowledge of that order, appropriate sanctions for civil contempt would be justified. The defendant may not insulate an exposure to contempt sanctions by limiting the definition of notice to his definition of that concept.

■ Here the plaintiff claims that the defendant violated the automatic stay by refusing to restore her operator's license after she filed a bankruptcy petition which listed, on Schedule A–3, the debt the defendant sought to secure under the State's financial responsibility law. It is apparent from the evidence, however, that prior to July 19, 1983, the defendant was withholding the plaintiff's operator's license for reasons in addition to noncompliance with that law.[10] The additional reasons (*supra* p. 475) included the plaintiff's failure to file an accident report and were well within the State's police powers. It is therefore unnecessary for this Court to determine whether, prior to July 19, 1983, the defendant violated the automatic stay since it was well within his authority under Code section 362(b)(4)[11] to withhold her license.

The debtor obtained a discharge by the Order of this Court on July 12, 1983, and as a consequence, the automatic stay in this Chapter 7 case terminated pursuant to Code § 362(c)(2)(C)[12] on that date. Because the plaintiff had not satisfied all of the defendant's nonfinancial responsibility law requirements prior to the termination of the automatic stay, it must be concluded that the defendant did not violate that injunction.

■ The plaintiff's discharge released her from all dischargeable debts. The debt which the defendant sought to protect under the State's financial responsibility law was dischargeable and therefore discharged by the July 12, 1983 order of this Court. The defendant's action in continuing the suspension of the plaintiff's operator's license because of her failure to comply with the State's financial responsibility law was an act related to the collection of a

---

10. Plaintiff's Exhibit No. 5.

11. Section 362(b)(4) provides:
"(b) The filing of a petition under section 301, 302, or 303 of this title does not operate as a stay—

. . . . .

"(4) under subsection (a)(1) of this section, of the continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; ..."

12. Section 362(c)(2)(C) provides:

"(c) Except as provided in subsections (d), (e), and (f) of this section—

. . . . .

"(2) the stay of any other act under subsection (c) of this section continues until the earliest of—

. . . . .

"(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, or 13 of this title, the time a discharge is granted or denied."

discharged debt and therefore a violation of Code § 524(a)(2).[13] Indeed, this same defendant in *Sampson, supra,* 17 B.R. at 530, 8 B.C.D. at 993, conceded that a debtor's operator's license must be restored after his discharge in bankruptcy.

As noted, however, civil contempt may not be found in the absence of knowledge of the court's order. *Fidelity Mortgage Investors v. Camelia Builders, Inc., supra, In re Lohnes, supra.* Unlike the automatic stay which takes effect upon the filing of a petition, a debtor's discharge is not necessarily automatic. But here the defendant has predicated his action in withholding the plaintiff's operator's license upon her failure to provide proof that she filed a bankruptcy petition. The defendant has taken the position in the events leading to and throughout this proceeding that he may not be charged with notice of the plaintiff's rights under the Code, including the relief she obtained under the discharge order of this Court, until she filed a copy of her bankruptcy petition with the DMV. The defendant may not now claim that he did not violate this Court's discharge order because he did not have notice of it, particularly since Attorney McCallum specifically advised Attorney Faulkner "that the notice request [of the DMV] asking for a copy of the Discharge was improper and that what was, in fact, required was a copy of the debtor's petition."[14]

■ Although a telephone call or other communication from a debtor might not be enough to put the DMV on notice that the debtor filed a bankruptcy petition, here the defendant conceded that his department received a March 1, 1983 letter from Attorney Faulkner advising that the plaintiff had filed a petition in bankruptcy on February 23, 1983 together with a copy of a portion of her Schedule A–3.[15] While the

sufficiency of notice must be evaluated on a case by case basis, this Court concludes that the written communication, signed by the plaintiff's attorney, who is admitted to practice in this Court, asserting that on a specific date her client filed in this district a petition in bankruptcy which included in the schedules the debt the defendant sought to secure, was sufficient in this instance to give the DMV reasonable, reliable and authentic notice of the plaintiff's petition. Armed with that kind of notice, it was the defendant's obligation to verify the plaintiff's petition if the defendant determined that verification was necessary or appropriate.

As noted, a state regulatory agency may not dictate eligibility standards for relief under the Code. If Connecticut's financial responsibility statute, in conflict with that relief, may not be utilized against a debtor, *In re Sampson, supra,* citing the Supremacy Clause of the United States Constitution (Art. 6, cl. 2); *Perez v. Campbell,* 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971); *Allen v. Leuba,* No. 14649 (D.Conn. Dec. 14, 1971), the defendant's policy which has the same effect must, *a fortiori,* yield to the debtor's congressionally mandated discharge rights.

■ The defendant's refusal to restore the plaintiff's operator's license after the July 12, 1982 discharge order of this Court violated that discharge order. Since the defendant had knowledge of the plaintiff's petition in bankruptcy, which by his criteria constituted knowledge of the plaintiff's rights under the Code, including the discharge order, the defendant's action constituted civil contempt.

1.
COMPENSATORY FINE

■ It is well established that civil contempt serves a remedial purpose by either

---

**13.** Section 524(a)(2) provides:
"(a) A discharge in a case under this title—

"(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or any act, to collect, recover or offset any such debt as a personal liability of the debtor, or from property of the

debtor, whether or not discharge of such debt is waived; ..."

**14.** Plaintiff's Exhibit No. 5 (paragraph 11).

**15.** Plaintiff's Exhibit Nos. 5 (paragraph 7), 7 and 8.

coercing a respondent into compliance with a court order or by compensating the complainant for losses sustained. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949), *In re Lohnes*, 26 B.R. 593, 596 (Bkrtcy.D.Conn. 1983), *In re Worthing*, 24 B.R. 774, 777, 9 B.C.D. 1135 (Bkrtcy.D.Conn.1982), *Matter of Gorin*, 18 B.R. 151, 153 (Bkrtcy.D.Conn. 1982) *citing U.S. v. United Mine Workers of America*, 330 U.S. 258, 303–4, 62 S.Ct. 677, 701, 91 L.Ed. 884 (1947). Since the defendant has already restored the plaintiff's operator's license, the sanctions of this Court are no longer necessary to coerce compliance with the discharge order. The question then is whether sanctions to compensate the plaintiff for any loss or damages she sustained as a result of the defendant's violation of that order are appropriate. *In re Lohnes, supra,* 26 B.R. at 596; *Matter of Gorin, supra,* 18 B.R. at 153; *In re Zartun*, 30 B.R. 543, 10 B.C.D. 909, 910 (Bkrtcy.App. 9th Cir.1982).

The imposition of a compensatory fine for civil contempt has been analogized by the Court of Appeals for this Circuit in *Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126 (2d Cir.1979) to a "tort judgment for damages caused by wrongful conduct. The sanction is employed not to vindicate the court's authority but to make reparation to the injured party and restore the parties to the position they would have held had the injunction been obeyed." *Id.* at 130. *See also Matter of Gorin, supra; In re Zartin, supra.*

According to the plaintiff's testimony, the loss of her operator's license caused her extreme inconvenience and hardship. She had to walk to the grocery store sever-al times a week. She even had to surrender the custody of her son because she could not transport him to school. On that basis the plaintiff seeks the benefit of a compensatory fine [16] for the damages she sustained from the beginning of March 1983, when she advised the DMV of her bankruptcy petition, until her operator's license was restored on or about November 7, 1983. An analysis of the evidence in this proceeding, however, demonstrates, as recounted above, that the defendant was entitled to withhold the plaintiff's operator's license until July 19, 1983, the date the DMV received the plaintiff's affidavit and the $10.00 restoration fee. After that, the defendant's refusal to restore the license constituted a violation of this Court's discharge order.

■ While uncontested evidence that a plaintiff endured inconvenience caused by a defendant's civil contempt would normally warrant compensation, this Court is constrained to hold that the Eleventh Amendment bars an award of retrospective compensatory damages to be assessed against the public treasury of the State of Connecticut.[17] *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 *reh'g denied*, 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974), *citing Rothstein v. Wyman*, 467 F.2d 226 (2d Cir.1972); *Ford Motor Co. v. Department of Treasury of State of Indiana*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); *see also Pennhurst State School and Hospital v. Halderman*, —— U.S. ——, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

■ The defendant has not raised the Eleventh Amendment bar to the jurisdiction of this Court as a defense in this

---

**16.** Although the plaintiff's complaint does not specifically seek a compensatory fine, the evidence offered during trial compels the conclusion that such an award is sought and was intended to be included within the nonspecific claim for "appropriate orders" and for "such other and future relief as this court deems appropriate."

**17.** The Eleventh Amendment provides:
"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."
But it is well settled that the prohibition extends to suits brought against a State by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974) *citing Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed.2d 842 (1890).

proceeding, but this Court may not overlook its clear implications. As the Supreme Court held in *Pennhurst:* "[T]he principle of sovereign immunity is a constitutional limitation on the federal judicial power established in Art. III" [18] *Id.* at ——, 104 S.Ct. at 907 *citing Ex parte State of New York No. 1*, 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921) ("[T]he entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a state without consent given."); *see Bertot v. School District No. 1 Albany County, Wyo.*, 522 F.2d 1171, 1185 (10th Cir.1975): ("[The Eleventh Amendment] bar is jurisdictional and must be noticed.")

■ The State of Connecticut is not a named defendant in this proceeding, but the Eleventh Amendment is a bar to awards to be paid out of the state treasury regardless of whether the state is specifically named. *Edelman v. Jordan*, 415 U.S. at 665, 94 S.Ct. at 1356, *citing Rothstein v. Wyman*, 467 F.2d at 236–237. Indicia that payment would be made from the state treasury include the bringing of a suit against a state official in his official capacity and representation of that defendant by the State's Attorney General, *Hutto v. Finney*, 437 U.S. 678, 693, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978), both present here.

■ In the context of this proceeding, the jurisdictional bar of the Eleventh Amendment may be surmounted only if (1) waived by the state, *Pennhurst State School & Hospital v. Halderman, supra*, —— U.S. at ——, 104 S.Ct. at 907 *citing Clark v. Barnard*, 108 U.S. 436, 447, 2

S.Ct. 878, 882, 27 L.Ed. 780 (1883) or (2) abrogated by Congress through legislation intended to enforce the substantive provisions of the Fourteenth Amendment,[19] *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976).

Waiver will be found only when expressly stated or implied unequivocally from a constitutional or statutory text "as [will] leave no room for any other reasonable construction." *Edelman v. Jordan*, 415 U.S. at 673, 94 S.Ct. at 1361, *citing Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909). There has been no express consent by the State of Connecticut in this proceeding. The mere fact that the defendant has defended this proceeding on the merits may not be construed as waiver by the State in the absence of a specific statute to that effect. *Ford Motor Co. v. Department of Treasury of Indiana*, 323 U.S. at 468, 65 S.Ct. at 352. Moreover, the State of Connecticut has neither by constitutional provision nor by statute waived its Eleventh Amendment immunity. It is, therefore, concluded that the State of Connecticut has neither expressly nor implicitly waived its Eleventh Amendment rights in this proceeding.

■ As noted, the defendant's action was in violation of this Court's discharge order made pursuant to Bankruptcy Code § 524. The Bankruptcy Code which traces its roots to Art. I, sec. 8, cl. 4 of the Constitution was obviously not enacted to enforce the substantive provisions of the Fourteenth Amendment. Thus it is further concluded that Congress has not abrogated the State's Eleventh Amendment immunity in this proceeding. This Court accordingly

**18.** Pursuant to 28 U.S.C. § 1471(a) and (b), the United States District Courts in this Circuit have jurisdiction in all cases under Title 11 and all civil proceedings arising under Title 11 or arising in or related to cases under Title 11. *In re Kaiser*, 722 F.2d 1574, 1578 (2d Cir.1983).

Jurisdiction of this Court in this proceeding is founded upon the Emergency Resolution For The Administration Of Bankruptcy System (Emergency Resolution), adopted by the United States District Court for the District of Connecticut on December 22, 1982, effective December

25, 1982. The validity of the Emergency Resolution was upheld. *Id.* at 1581.

Since the jurisdiction of this Court in this proceeding is derived from a reference from the District Court under paragraph (c) of the Emergency Resolution and since the jurisdiction of the District Court, as an Article III court, is limited by the Eleventh Amendment, it is self-evident that the jurisdiction of this Court is no less limited by the Eleventh Amendment.

**19.** Pursuant to § 5 of the Fourteenth Amendment.

recognizes its lack of jurisdiction to award the plaintiff compensation. Notwithstanding any characterization of such compensation as a "fine" [20], an award here would be purely retrospective compensation which is barred by the Eleventh Amendment. *Edelman v. Jordan, supra.*

## 2.
## ATTORNEY'S FEES

■ Unlike attorney's fees which are mandated in civil rights proceedings under 42 U.S.C. §§ 1983 and 1988, discussed *infra*, attorney's fees as an element of sanctions for civil contempt are only appropriate where a defendant's conduct was tantamount to a bad faith violation of a court order. *Class v. Norton*, 505 F.2d 123, 127 (2d Cir.1974), *citing Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973). Even assuming *arguendo* that such a finding were appropriate, the plaintiff's claim for attorney's fees could only surmount the Eleventh Amendment barrier if it were incident to a claim for *prospective* relief. *Class v. Norton, supra,* 505 F.2d at 126, *citing, Jordan v. Fusari,* 496 F.2d 646, 651 (2d Cir. 1974).

This Court does not find that the defendant's contemptuous behavior was in bad faith. The defendant was merely operating on the sincere but erroneous belief that the DMV could insist upon a debtor's compliance with its policy to administer the State's financial responsibility law. Moreover, since the defendant restored the plaintiff's operator's license, and prospective relief is inappropriate, the plaintiff's claim for an award of attorney's fees must fail.

## B.
## CIVIL RIGHTS, 42 U.S.C. § 1983
## 1.
## DAMAGES

The plaintiff argues that the defendant's refusal to restore her motor vehicle operator's license, in violation of the automatic stay and this Court's discharge order, violated her civil rights. She seeks damages in that regard pursuant to 42 U.S.C. § 1983 which in pertinent part provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action of law, suit in equity, or other proper proceeding for redress.

■ The plaintiff is correct that she was deprived of rights granted by the discharge order of this Court which are rights under Title 11 of the United States Code and are therefore rights "secured by the Constitution and laws" of the United States. Generally, deprivation of federal statutory rights are actionable under 42 U.S.C. § 1983 regardless of whether constitutional rights are involved. *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980). But here, as with the civil contempt discussion, *supra,* the Eleventh Amendment bars any award of retroactive compensation. Standing alone, § 1983 does not abrogate Eleventh Amendment immunity, *Quern v. Jordan,* 440 U.S. 332, 340, 99 S.Ct. 1139, 1144, 59 L.Ed.2d 358 (1978), and as previously noted, the Bankruptcy Code does not supply the necessary statutory authority in this proceeding.

## 2.
## ATTORNEY'S FEES

■ Title 42 U.S.C. § 1988 provides in pertinent part:

**20.** In *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), the court noted that a fine for civil contempt, assessed as *part of a prospective injunctive order* is not barred by the Eleventh Amendment merely because compensation is an *ancillary* effect. 437 U.S. at 690–691, 98 S.Ct. at 2573–74. *See also Fortin v. Commissioner of Massachusetts Department of Public Welfare,* 692 F.2d 790 (1st Cir.1982).

In any action or proceeding to enforce a provision of [§ 1983] ..., the court, in its discretion, may allow the prevailing party ... a reasonable attorney's fee as part of the costs.

The fee shifting directive of § 1988 surmounts the "American Rule" that each party should bear its own attorney's fees in the absence of express statutory authorization. *Hensley v. Eckerhart* — U.S. —, —, 103 S.Ct. 1933, 1937, 76 L.Ed.2d 40 (1983), *citing Alyeska Pipeline Service for Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1978).

Discretion in denying attorney's fees to a prevailing plaintiff is limited under § 1988. A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render an award unjust." S.Rep. No. 94–1011, p. 4 (1976), U.S. Code Cong. & Admin.News 1976, pp. 5908, 5912 (*quoting Newman v. Piggie Park Enterprises,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)), *quoted in Hensley v. Eckerhart,* — U.S. —, —, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

Whether a plaintiff has "prevailed" is determined by whether the plaintiff has succeeded on any significant issue which achieves "some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart, Id., quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir.1978).

■ Approximately one month after this proceeding was commenced, defendant returned plaintiff's motor vehicle operator's license. While the return of plaintiff's license constituted a "success" it was neither ordered by this Court nor directed by any settlement between the parties.[21]

■ The plaintiff's request for relief is as follows:

WHEREFORE, plaintiff claims (1) an order holding defendant and his attorney in contempt; (2) an order assessing attorney's fees and costs against defendant and his attorney, pursuant to the equitable powers of this Court, and pursuant to 42 U.S.C. § 1988; (3) an order enjoining the defendant from withholding plaintiff's license privileges; (4) an order enjoining defendant from demanding physical proof of bankruptcy, once he learns of the automatic stay; (5) appropriate orders for contempt and violation of plaintiff's civil rights, including attorney's fees payable to New Haven Legal Assistance Association; (6) such other and further relief as this Court deems appropriate.

This Court finds that the plaintiff has not succeeded on any significant issue. As noted, the plaintiff's operator's license was returned prior to trial. Once the license was returned, the defendant was no longer in contempt and an order "holding the defendant and his attorney[22] in contempt", "enjoining the defendant from withholding the plaintiff's license privileges," or "enjoining defendant from demanding physical proof of bankruptcy ..." became unnecessary. Other claimed relief seeking retrospective compensation is, as previously noted, inappropriate. Accordingly, attorney's fees under § 1988 are not applicable here.

Even assuming that a declaratory judgment finding that the defendant had been in contempt and had violated plaintiff's discharge rights would constitute success, this Court would exercise its allowable discretion to deny attorney's fees in this proceeding.

Plaintiff testified at trial that she had never been advised by her attorney that her operator's license could have been restored immediately if she sent the DMV a copy of her petition in bankruptcy. While under no *duty* to send the petition, the plaintiff's apparent sole desire was the return of her operator's license, not a judicial vindication of her statutory rights. Unlike any § 1983 litigation which has come to the attention of this Court, the plaintiff here, if

---

**21.** A settlement between the parties does not preclude a finding that plaintiff achieved success in § 1983 litigation, *Maher v. Gagne,* 448 U.S. 122, 100 S.Ct. 2570, 65 L.Ed.2d 653 (1980).

**22.** See n. 1.

given the option, would have been able to prevent all of the inconvenience, recounted *supra* at 479, which she was forced to endure.

The revelation of plaintiff's testimony provokes the suspicion that perhaps the plaintiff's attorney had confused her role in this matter and had lost sight of her client's objective.[23] Testimony by the defendant revealed no evidence of malice or ill will toward the plaintiff. The defendant acknowledged that if he had "known" (knowledge defined by the defendant as being possession of the petition) that the plaintiff was a debtor in bankruptcy, her license would have been restored.

This Court finds that the plaintiff's attorney's failure to inform her of the most direct method of attaining her objective constitutes a "special circumstance" *Newman v. Piggie Park Enterprises*, 390 U.S. at 402, 88 S.Ct. at 966, sufficient to warrant a denial of attorney's fees. It should be noted moreover that the Court of Appeals for this Circuit has ruled that contemporaneous time records must be submitted in an application for 42 U.S.C. § 1988 attorney's fees. *New York Association for Retarded Children v. Carey*, 711 F.2d 1136 (2d Cir.1983). The plaintiff's attorneys[24] have submitted no time records.

■ Although this Court has concluded that the plaintiff is not entitled to an award of attorney's fees under 42 U.S.C. § 1988, it should be noted, however, that even if the plaintiff were entitled to such an award under that section, the Eleventh Amendment would bar such a recovery. In that context it must be observed that the Supreme Court has specifically reserved the question of whether "Congress may empower federal courts to award fees against the States only insofar as it is exercising its power under § 5 of the Fourteenth Amendment to enforce the substantive rights conferred by that Amendment." *Maher v. Gagne*, 448 U.S. 122 at 130, 100 S.Ct. 2570 at 2575, 65 L.Ed.2d 653[25] and at 135, 100 S.Ct. at 2577 (Rehnquist, J. concurring). Thus, in the absence of higher court authority, this Court will not read § 1988 as authorizing an award of attorney's fees against a State in § 1983 actions which were not brought to vindicate Fourteenth Amendment rights or enforce substantive civil rights statutes which were themselves enacted pursuant to § 5 of that Amendment.

Therefore, notwithstanding any infirmity in the merits of her claim for attorney's fees under § 1988, an award of attorney's fees here is barred by the Eleventh Amendment. The plaintiff's cause of action under § 1983 arises under her rights incidental to a discharge in bankruptcy pursuant to 11 U.S.C. § 524, and as noted, the Bankruptcy Reform Act of 1978, P.L. 95–598, was enacted pursuant to Congress's power to enact uniform laws on the subject of bankruptcy, Art. I, § 8, cl. 4, not § 5 of the Fourteenth Amendment.

### III.

### ORDER

For the foregoing reasons, the plaintiff is not entitled to a finding that the defendant

---

**23.** Ethical Consideration 7–8 of the Model Code of Professional Responsibility adopted by the Supreme Court of the State of Connecticut and applicable here provides in part:

A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of the relevant considerations.... A lawyer should advise his client of the possible effect of each legal alternative. A lawyer should bring to bear the fullness of his experience as well as his objective viewpoint.

Rule 1.4 ("Communication") of the Model Rules of Professional Conduct is in accord.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

**24.** Attorney Faulkner of the New Haven Legal Assistance Association represented the plaintiff during the pretrial phases of this proceeding. Attorney Dineen of the same firm represented the plaintiff during the trial.

**25.** *Maher* allowed attorney's fees because in addition to the statutory claims urged, the appellant alleged constitutional claims found to be "substantial". No constitutional claims were alleged in this proceeding. The only viable claim was that defendant deprived plaintiff of rights conferred by this Court pursuant to 11 U.S.C. § 524.

is in contempt, damages or attorney's fees for past contempt, damages or attorney's fees for a violation of the plaintiff's civil rights, or any other relief claimed in her complaint and it is hereby

ORDERED that Judgment may enter in favor of the defendant accordingly.