In re R & L REFUNDS, Debtor.

R & L REFUNDS, Plaintiff,

v.

UNITED STATES of America (Internal Revenue Service), Defendant.

Bankruptcy No. 1840243.
Adv. No. 1840034.

United States Bankruptcy Court,
W.D. Kentucky.

Jan. 17, 1985.

Henry Dickinson, Glasgow, Ky., for plaintiff.

Ray White, Bowling Green, Ky., for plaintiff.

Michael J. Salem, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

James L. Kerr, Asst. U.S. Atty., Louisville, Ky., for defendant.

## MEMORANDUM OPINION

MERRITT S. DEITZ, Jr., Bankruptcy Judge.

One of the oldest principles of Anglo-American jurisprudence, the doctrine of sovereign immunity, emerges as an early consideration in this dispute between the Internal Revenue Service and a tax-refund merchant seeking safe haven in Chapter 11. The question is before us on an IRS motion to dismiss, for lack of subject matter jurisdiction, the debtor's complaint for a turnover of certain tax refund checks.

The debtor R & L Refunds, Inc. (R & L) has engaged for some years in the business of "discounting"[1] or purchasing tax refunds from individual taxpayers, most of whom are soldiers at nearby Ft. Campbell, Ky. When R & L purchases a tax refund it requires the seller to execute a power of attorney in favor of R & L. The power of attorney authorizes R & L to receive and negotiate the taxpayer's refund check when it is received. In order to facilitate the receipt of the purchased refund checks, R & L substitutes its mailing address for the address of the taxpayer on the tax return of the selling taxpayer.

This practice of discounting tax refunds is opposed by the IRS on policy grounds. The IRS has undertaken a variety of actions[2] calculated to end this business. It is the "anti-discounting" measure known as the "diversion program" which gave rise to the present proceeding.

The diversion program is an internal administrative effort by the IRS to eliminate

---

1. Discounting ... means lending money upon [an obligation] and deducting the interest or premium in advance. *Black's Law Dictionary* (5th ed. 1979) at 418. In the present case dis-

counting means the purchasing of tax refunds at less than their face amount.

2. The IRS has attempted a variety of "remedial measures" to eliminate the discounting of feder-

tax refund discounters by sending tax refunds not to the discounter whose address is listed on the return, but to the taxpayer who sold the refund.[3] The program is carried out by means of computer identification of suspected discounter addresses. Once a return is identified as going to a discounter address, an IRS service center routes the refund to the last known address of the taxpayer where they are either delivered to the taxpayer, forwarded to the taxpayer's new address or returned as undeliverable as addressed.

In the case of R & L, a large number of purchased refunds[4] were diverted from R & L's mailing address and sent directly to the taxpayers. This diversion of refunds caused the R & L bankruptcy reorganization filing and precipitated the present turnover action by the debtor against the IRS. The controversy is before us on the IRS motion to dismiss the debtor's turnover proceeding on sovereign immunity grounds. By stipulation of the parties, further developments in the litigation await our determination of that single question.

\* \* \* \* \* \*

In statutory language, the issue is whether Section 106(c)[5] of Title 11 of the United States Code constitutes an express waiver of sovereign immunity by the United States as a defense to an 11 U.S.C. § 542[6] turnover action. Section 106(c) provides:

> (c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—
>
> (1) a provision of this title that contains "creditor" "entity" or "governmental unit" applies to governmental units; and
>
> (2) a *determination by the court of an issue arising under such a provision* binds governmental units.[7] [Emphasis Added]

---

al tax returns. In one case, an injunctive suit has been filed against discounters. *United States v. E & L Refunds, Inc.,* No. C84–0069–BG(S) (W.D.Ky.). The army has also placed the discounters' business premises off-limits to military personnel who previously constituted the greater numbers of the discounters' customers. *Internal Revenue Service's Memorandum in Support of Motion to Dismiss, at 4.*

**3.** Due to the frequency of military transfers it would be difficult, if not impossible, for the debtor to commence recovery actions against individual tax refund sellers in the various jurisdictions where they now reside. Although we do not doubt the honesty of those who sold their tax returns to the debtor, the court recognizes the confusion that the receipt of a previously-transferred tax refund would cause the average taxpayer. For these reasons, the IRS diversion program has had the practical effect of rendering the debtor insolvent.

**4.** We cannot know how many of the refunds in question are still in the possession of the IRS, due to the anti-disclosure provisions of Section 6103 of the Internal Revenue Code. *See* 26 U.S.C. § 6103.

**5.** Due to our resolution of this case we need not consider whether sections 106(a) and 106(b) also act as waivers of sovereign immunity under these circumstances.

**6.** Section 542 provides in part that:

... an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, ... shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

**7.** The legislative history of § 106(c) provides further guidance on the scope of this section's waiver of sovereign immunity:

Section 106(c) relating to sovereign immunity is new. The provision indicates that the use of the term "creditor," "entity," or "governmental unit" in title 11 applies to governmental units notwithstanding any assertion of sovereign immunity and that an order of the court binds governmental units. The provision is included to comply with the requirement in case law that an express waiver of sovereign immunity is required in order to be effective. Section 106(c) codifies *In re Gwilliam,* 519 F.2d 407 (9th Cir., 1975), and *In re Dolard,* 519 F.2d 282 (9th Cir., 1975), permitting the bankruptcy court to determine the amount and dischargeability of tax liabilities owing by the debtor or the estate prior to or during a bankruptcy case whether or not the governmental unit to which such taxes are owed files a proof of claim. Except as provided in sections 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, sec-

The IRS does not contest the fact that § 106(c) creates a significant waiver of sovereign immunity.[8] Rather it argues that a turnover under the provisions of § 542 is not a "determination" for the purpose of § 106(c) and that therefore the waiver of sovereign immunity contained therein does not apply to such actions. We find this argument to be without merit.

As a fundamental rule of statutory construction, an otherwise undefined word in a statute must be given its common meaning, absent a clearly expressed legislative intent to the contrary.[9] *Black's Law Dictionary,* (5th ed. 1979) at 405 defines "determination" as "the decision of a court or administrative agency. It implies an ending or finality of a controversy or suit. *Piccone v. U.S.,* 186 Ct.Cl. 752, 407 F.2d 866, 873." It is clear that a § 542 turnover order is a "determination" under the above-given definition. The legislative history of section 106(c)[10] gives no hint of the "implied limitations" which the IRS argues that we should place on this provision through a rather narrow construction of the word "determination".

Furthermore, the case law clearly supports the proposition that the IRS is not protected from the turnover provisions of § 542 by the doctrine of sovereign immunity. Although the case did not directly involve a claim of sovereign immunity, the U.S. Supreme Court in *United States v. Whiting Pools, Inc.,*[11] stated that: *"The [Internal Revenue] Service is bound by § 542(a) to the same extent as any other secured creditor.* The Bankruptcy Code expressly states that the term "entity", used in § 542(a) includes a governmental unit § 101(14)" [Emphasis added].[12] Two Bankruptcy Court opinions written prior to the *Whiting Pools* case reached the same result.[13]

In conclusion, we determine that R & L's turnover action against the IRS is not barred by the doctrine of sovereign immu-

---

tion 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is thereby overruled.
124 Cong. Rec. H. 11,091 (Sept. 28, 1978); S. 17,407 (Oct. 6, 1978).
A leading authority on the Bankruptcy Code, Professor Frank Kennedy, in his compiled lectures on the Bankruptcy Reform Act of 1978, published by the Institute of Continuing Legal Education (1979), at 63 stated that: "Section 106 though cryptic in its language goes almost as far" as proposed section 1–104 of the Bankruptcy Code which, if it had been enacted, would have abolished the defense of sovereign immunity in all bankruptcy proceedings. H.R. Poc. No. 93–137, 93d Cong., 1st Sess. Pt. II § 1–104 (1973). *See also* Kennedy, Automatic Stays Under the New Bankruptcy Law, 12 U. of Mich. J.L. Ref. 3, 29 (1978).

8. This constitutes a significant change in the Internal Revenue Service's position on this issue. *See Matter of Neavear,* 674 F.2d 1201, 1204 (7th Cir.1982); *Matter of Community Hospital of Rockland County,* 15 B.R. 785, 789 (Bkrtcy.S.D. N.Y.1981); *Matter of Remke, Inc.,* 5 B.R. 299 (Bkrtcy.E.D.Mich.1980).

9. *NLRB v. Amax Coal Co.,* 453 U.S. 322, 329, 101 S.Ct. 2789, 2794, 69 L.Ed.2d 672 (1981); *Burns v. Alcala,* 420 U.S. 575, 95 S.Ct. 1180, 43 L.Ed.2d 469 (1975); *Matter of Clark,* 738 F.2d 869 (7th Cir.1984).

10. *See* note 7 *supra.*

11. 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515, 8 C.B.C.2d 710 (1983).

12. 103 S.Ct. at 2315.

13. The court stated in *In re Bush Gardens,* 10 B.R. 506 (Bkrtcy.D.N.J.1979) that:
     The Internal Revenue Service is not immune from the provisions of Section 542. Section 542 provides for turnover of property by an "entity". An entity under the Code includes any "person, estate, trust, governmental unit". 11 U.S.C. § 101(14). "Governmental unit" includes the United States. 11 U.S.C. § 101(21). Accordingly, the Internal Revenue Service as a governmental unit comes within the purview of Section 542.[8]
*Id.,* at 508.
     The court further stated in footnote 8 of its opinion that: "Sovereign immunity was not raised as a defense by the United States. See 11 U.S.C. § 106(c)."
     In a similar case, *In re Ray Heid, Inc.,* 13 B.R. 171 (Bkrtcy.D. N.M.1981) the court stated in passing that "It appears uncontroverted that under the Bankruptcy Code [the] IRS is a governmental agency properly carrying out its governmental function in collecting taxes and [is] an 'entity' which is subject to a turnover proceeding". *Id.* at 172–73.

nity. We find no support in either the case law or the literal construction of the statute itself for the IRS contention that § 106(c) does not waive the United States sovereign immunity in § 542 turnover actions.

Therefore by separate Order we will overrule with prejudice the Internal Revenue Service motion to dismiss for lack of subject matter jurisdiction.