In re Migdalia COLON a/k/a Migdalia Santiago, Debtor.

Migdalia COLON, Plaintiff,

v.

Royal HART, Chief Clerk, City of Philadelphia, Traffic Court, Howard Yerusalim, Secretary, Commonwealth of Penna., Dept. of Transportation and Edward Sparkman, Standing Trustee, Defendants.

In re Fred J. SZOSTEK, Denise M. Szostek, Debtors.

Fred SZOSTEK, Plaintiff,

v.

Royal HART, Chief Clerk City of Philadelphia, Traffic Court, Howard Yerusalim, Secretary, Commonwealth of Pennsylvania, Department of Transportation, Edward Sparkman, Standing Trustee, Defendants.

Bankruptcy Nos. 87–03126F, 87–03425F. Adv. Nos. 88–0294F, 88–0330F.

United States Bankruptcy Court, E.D. Pennsylvania.

June 7, 1990.

---

David A. Searles, Community Legal Services, Philadelphia, Pa., for the debtors, plaintiffs, Migdalia Colon and Fred Szostek.

Howard M. Holmes, Charles W. Johns, Philadelphia, Pa., for defendant, Royal Hart, Chief Clerk, City of Philadelphia, Traffic Court.

Christopher Clements, Harrisburg, Pa., for defendant, Howard Yerusalim, Secretary Com. of Pa., Dept. of Transp.

Edward Sparkman, Philadelphia, Pa., defendant and Chapter 13 Standing Trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

At issue before me is the scope of relief which may be afforded a debtor against governmental defendants who have been found to have "willfully" violated the bankruptcy automatic stay, 11 U.S.C. § 362(a). *See generally In re Atlantic Business & Community Dev. Corp.*, 901 F.2d 325 (3d Cir.1990). Because the above two adversary proceedings have the same defendants, the same counsel, and similar issues, the debtors requested that they be consolidated for purposes of trial. The defendants did not oppose this consolidation. By memorandum opinion and order, reported at *In re Colon*, 102 B.R. 421 (Bankr.E.D. Pa.1989), I concluded that defendants Philadelphia Traffic Court and its Chief Clerk, Royal Hart, willfully violated the automatic stay as to debtor Colon by attempting to collect a prepetition traffic fine.[1] As to

---

1. The Third Circuit Court of Appeals in *Atlantic Business*, 901 F.2d at 328–29, has just adopted the Ninth Circuit's definition of "willful":

   A 'willful violation' does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded.

debtor Fred Szostek, I concluded that these same defendants, along with the Commonwealth of Pennsylvania Department of Transportation and its Secretary, Howard Yerusalim, willfully violated the automatic stay by coercing the debtor into paying his prepetition traffic fine. *See also. In re Adams*, 106 B.R. 811 (Bankr.D.N.J.1989).

In their complaints, the debtors sought injunctive and declaratory relief, damages and attorney's fees. By earlier order, they were granted the injunctive relief they sought. Given the Supreme Court's decision in *Hoffman v. Connecticut Department of Income Maintenance*, ── U.S. ──, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989), I requested supplemental memoranda, and then heard argument, on the question of the monetary relief that may be afforded against these various defendants. Plaintiff Szostek contends that while he is not entitled to recover compensatory damages from PennDot and Mr. Yerusalim—he believes defendants' Eleventh Amendment immunity would prevent such relief—he is nonetheless not precluded from receiving an award of attorney's fees from these defendants. As to defendants Philadelphia Traffic Court and Mr. Hart, debtors Colon and Szostek argue that a monetary recovery against them (along with attorney's fees) is warranted. Among other issues, the debtors contend that these particular defendants are, respectively, a unit of a municipality and a municipal official and so are not entitled to Eleventh Amendment protection from compensatory damages. *See Mt. Healthy City School District v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (Eleventh Amendment immunity does not extend to counties and municipal corporations).

PennDOT and Mr. Yerusalim counter by suggesting that even an award of attorney's fees would violate their sovereign immunity and that Mr. Yerusalim also possesses official immunity from such an award. Philadelphia Traffic Court and Mr. Hart challenge the debtors' assertion that they are municipal rather than state defendants; thus, they claim Eleventh Amendment immunity. They also assert judicial immunity, official immunity, and quasi-judicial immunity, and they argue that these various immunities preclude any order that involves payments to the debtors or their counsel.

I.

█ It has long been held that sovereign immunity is not a bar to the entry of injunctive or declaratory relief, as such relief is prospective. *Accord, e.g., Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). *See also In re Will Rogers Jockey & Polo Club, Inc.*, 111 B.R. 948 (Bankr.N.D.Okla.1990). Recently, the Supreme Court addressed whether Eleventh Amendment immunity (or even judicial immunity) precludes an award of attorney's fees against a defendant who has been found to violate federal law, and against whom injunctive or declaratory relief has been entered. The Court has repeatedly concluded that attorney's fees are in the nature of prospective relief and as such are not barred by these immunity doctrines. *Missouri v. Jenkins*, ── U.S. ──, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989); *Pulliam v. Allen*, 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). Therefore, when governmental entities willfully violate the provisions of 11 U.S.C. § 362(a), attorney's fees may be awarded by virtue of § 362(h), even though the creditor may be immune from damage awards. *Accord In re Ellis*, 66 B.R. 821, 822–23 n. 4 (N.D.Ill.1986); *In re James*, 112 B.R. 687 (Bankr.E.D.Pa.1990). *See also, e.g., In re Rinehart*, 76 B.R. 746 (Bankr.D.S.D.1987), *aff'd*, 88 B.R. 1014 (D.S.D.1988), *aff'd in part, Small Business Administration v. Rinehart*, 887 F.2d 165 (8th Cir. 1989) (punitive damages but not attorney's fees are barred by sovereign immunity); *In re Conti*, 42 B.R. 122 (Bankr.E.D.Va.1984)

*In re Bloom*, 875 F.2d 224, 227 (9th Cir.1989) (*quoting In re INSLAW, Inc.*, 83 B.R. 89, 165 (Bankr.1988). *Accord In re Crysen/Montenay*

*Energy Co.*, 902 F.2d 1098 (2d Cir.1990); *In re Wagner*, 74 B.R. 898, 903 (Bankr.E.D.Pa.1987).

(attorney's fees awarded against IRS for violating automatic stay). *Contra In re Woloschak Farms*, 109 B.R. 736 (N.D.Ohio 1989); *In re Academy Answering Service, Inc.*, 100 B.R. 327 (N.D.Ohio 1989). Therefore, I conclude that both debtors may obtain attorney's fees for their successful litigation in this matter.

## II.

Since the debtors make no claim for compensatory damages against PennDot or Mr. Yerusalim, I need only address the immunity claims of the Philadelphia Traffic Court and Mr. Hart, the clerk of that court. The debtors argue that Philadelphia Traffic Court is a municipal entity not entitled to assert sovereign immunity. As noted by a commentator:

Eleventh Amendment immunity does not extend, however, to municipalities, counties, and other units of local government that are not agencies, instrumentalities, or arms of the state.

It is not always easy to distinguish between state and local agencies at first glance. The courts will resolve the question by determining whether the agency is an "alter ego" of the state entitled to the protection of state immunity or a separate entity not so protected. The analysis most often turns on the fiscal independence of the agency and whether a judgment against it would be paid from state funds, on the manner in which the agency is treated under state law, and on the degree of autonomy the agency exercises with respect to the state.

1 *Moore's Federal Practice* ¶ 0.60[2.–2], at 616–17 (2d ed. 1990) (footnotes omitted). *Accord Greer v. Metropolitan Hosp.*, 235 Pa.Super. 266, 341 A.2d 520 (1975) (distinguishing between state sovereign immunity and municipal governmental immunity— the latter being abolished in Pennsylvania); *In re Trina–Dee, Inc.*, 18 B.R. 330 (Bankr. E.D.Pa.1982) (municipalities may not assert sovereign immunity).

In support of their assertion that Traffic Court is a municipal agency, the debtors rely solely upon the provisions of 42 Pa.C.S.A. § 1321:

The Traffic Court of Philadelphia shall be a court not of record and shall consist of six judges. *The court is established for the City and County of Philadelphia.*

(emphasis added). As the defendants note, though, Article V § 1 of the Pennsylvania Constitution establishes a "unified judicial system," the language of which expressly includes Philadelphia Traffic Court. Furthermore, 42 Pa.C.S.A. § 102 states that the "government of the Commonwealth [includes] the courts ... of the unified judicial system and excludes municipal agencies." Thus, Philadelphia Traffic Court is made part of the state government.

In addition, the Governor of Pennsylvania appoints the President Judge of Philadelphia Traffic Court. 42 Pa.C.S.A. § 325(c). The tenure and salary of the court judges are established by state statute. 42 Pa.C.S.A. § 3152(a)(1); 65 P.S. § 366.2(f.1). Their compensation is paid by the state. Const. art. V, § 16(a). The funds which Traffic Court collects are apportioned between the state and the municipality. 42 Pa.C.S.A. § 3571(b).[2] Finally, while the operating funds for the court and its non-judicial personnel are currently paid by the municipality, the Pennsylvania Supreme Court has held that it is the duty of the Commonwealth to pay for these expenses, because the courts are a part of the unified judicial structure of the state. *County of Allegheny v. Commonwealth*, 517 Pa. 65, 534 A.2d 760 (1987).

On balance, I conclude that Philadelphia Traffic Court is an entity of the Commonwealth of Pennsylvania, rather than of the City and County of Philadelphia. As such, that court and its chief clerk are entitled to assert Eleventh Amendment immunity. The question then becomes whether such immunity protects them from the imposition of any award (beyond that of attor-

---

**2.** The traffic infractions involving these debtors were cited by local Philadelphia police officers. As a result, the fines collected are divided equally between the Commonwealth and the City. 42 Pa.C.S.A. § 3571(b)(3).

ney's fees) for having violated the automatic stay.

### III.

The issue of recovery for stay violations against governmental entities with sovereign immunity has not been uniformly determined by the courts. Defendants rely upon such decisions as *In re Wallen*, 75 B.R. 897 (Bankr.D.Conn.1987) which concluded (in reliance on that court's earlier decision, *In re Arminio*, 38 B.R. 472 (Bankr.D.Conn.1984)), that the Eleventh Amendment bars compensatory damage awards from governmental entities protected by sovereign immunity for their violation of the automatic stay.[3] *See also In re Pearson*, 1989 WL 122136, 1989 U.S. Dist. Lexis 12157 (D.Or.1989) (debtor did not challenge immunity of governmental entity from damages for violation of the stay); *In re Kuck*, 111 B.R. 995 (Bankr.S.D.Ala.1990) (dicta).

The *Arminio* conclusion was by no means a majority position. Many courts had concluded that governmental entities such as the Internal Revenue Service were enjoined by the statutory stay found in § 362(a) despite sovereign immunity. *See, e.g., United States v. Norton*, 717 F.2d 767 (3d Cir.1983); *In re Newlin*, 29 B.R. 781 (E.D.Pa.1983); *In re Hammett*, 28 B.R. 1012 (E.D.Pa.1983). Some reasoned that if subsection 362(a) did not apply to governmental entities, subsection (b), which exempted governmental creditors from the reach of the stay in certain circumstances, would be meaningless. *Penn Terra, Ltd.*

*v. Department of. Environmental Resources*, 733 F.2d 267, 271–72 (3d Cir.1984). Others noted that subsection 362(a) included the term "entities" among those enjoined. By virtue of 11 U.S.C. § 106(c), provisions of the bankruptcy code using the term "entity" are binding upon governmental units. *Accord, e.g., Soiett v. U.S. Veterans' Admin.*, 92 B.R. 563 (Bankr.D. Me.1988). *See also In re Pressimone*, 39 B.R. 240 (N.D.N.Y.1984) (co-debtor stay overrides sovereign immunity). Courts further held that relief against a governmental entity in some monetary form, sometimes including attorney's fees, could be granted. *Accord, e.g., Lee v. Schweiker*, 739 F.2d 870 (3d Cir.1984) (postpetition setoff in violation of the automatic stay may be recovered); *In re Rinehart; In re INSLAW, Inc.*, 76 B.R. 224 (Bankr.D.D.C. 1987). *See also In re Auto–Pak, Inc.*, 63 B.R. 321 (Bankr.D.D.C.1986), *rev'd on other grounds*, 73 B.R. 52 (D.D.C.1987) (recovery under § 550 permitted); *In re R & L Refunds*, 45 B.R. 733 (Bankr.W.D.Ky.1985) (recovery permitted under § 542); *In re Davis*, 20 B.R. 519 (Bankr.M.D.Ga.1982) (preference action can be maintained).

Those decisions which relied upon 11 U.S.C. § 106(c) in concluding that sovereign immunity was inapplicable as a bar to monetary relief against governmental entities did not have the benefit of the Supreme Court's decision in *Hoffman*. There the Court plurality[4] instructed that subsection 106(c)[5] could not be interpreted as a clear abrogation of Eleventh Amendment immu-

---

**3.** *Arminio* held that the Connecticut Department of Motor Vehicles violated the automatic stay by denying the debtor her driver's license because of an unpaid prepetition accident claim held by a private individual. In such a case, it may have been more appropriate to grant relief under 11 U.S.C. § 525(a) as opposed to § 362(a). *See, e.g., Henry v. Heyison*, 4 B.R. 437 (E.D.Pa. 1980). The scope of damage recovery under these two sections is different, with § 525(a) being less amenable to a damage award. *In re Saunders*, 105 B.R. 781, 788–89 (Bankr.E.D.Pa. 1989). Thus, the denial of compensatory damages in *Arminio* (if § 525(a) were viewed as the basis for injunctive relief) may have been appropriate.

In addition, *Arminio* suggested that an award of attorney's fees would also be barred by sover-

eign immunity. In light of recent Supreme Court decisions, I cannot accept that suggestion.

**4.** Two Justices concluded that Congress has no power to abrogate Eleventh Amendment immunity by the exercise of its powers under Article I of the Constitution. By that analysis, section 106(c) could not support a waiver of Eleventh Amendment immunity regardless of its "unmistakable clarity."

**5.** Subsections 106(a) and (b) permit monetary recoveries against state entities which have filed proofs of claims. *See In re Saint Joseph's Hospital*, 103 B.R. 643 (Bankr.E.D.Pa.1989). *See also In re Lile*, 103 B.R. 830 (Bankr.S.D.Tex.1989) (IRS waives immunity by filing proof of claim).

nity from damage recoveries—although injunctive and declaratory relief could be granted.[6] Therefore, to the extent that a debtor seeks any monetary recovery from an entity with such immunity, such as the Philadelphia Traffic Court, § 106(c) now offers no support.[7] And, without § 106(c), the applicability of § 362(h) as to damage recoveries against entities with such immunity is problematic.

Yet an analysis of this question which rests solely upon the applicability of § 362(h) is incomplete. This subsection was first enacted in 1984 and applies only to bankruptcy cases filed after its effective date. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353. *See In re Wagner,* 74 B.R. 898 (Bankr.E.D.Pa.1987). In cases filed prior to its enactment, courts nevertheless had granted monetary relief against creditors that violated the bankruptcy stay. *See, e.g., Matter of Carter,* 691 F.2d 390 (8th Cir.1982); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306 (11th Cir.1982); *In re Miller,* 22 B.R. 479 (D.Md.1982). Indeed, they granted relief against governmental creditors that violated the stay. *Accord In re Norton; In re Conti,* 42 B.R. 122 (Bankr.E.D.Va.1984); *In re Mealey,* 16 B.R. 800 (Bankr.E.D.Pa.1982). *See also In re Ellis* (state welfare department found in civil contempt for violating stay). If section 362(h) were the sole basis upon which such relief could be granted, those decisions would be inexplicable. In fact, the little legislative history connected with § 362(h) suggests that it was intended as a supplemental remedy and not the exclusive remedy for stay violations. 130 Cong.Rec. H1942 (daily ed. March 26, 1984) (remarks of Rep. Rodino) (section § 362(h) "is an additional right of individual debtors, and is not intended to foreclose recovery under already existing remedies"). *See In re Crysen/Montenay Energy Co.,* 902 F.2d 1098, 1104 (2d Cir.1990) ("The enactment of subsection (h) granted bankruptcy courts an independent statutory basis, apart from their contempt power, to order sanctions against violators of automatic stay"); *In re Wagner,* 74 B.R. at 902.

Before the enactment of section 362(h), courts viewed a violation of the bankruptcy stay as though it were the violation of a court order which might be redressed by civil contempt. The leading decision upholding the power to address stay violations by contempt is *Fidelity Mortg. Investors v. Camelia Builders, Inc.,* 550 F.2d 47 (2d Cir.1976), *cert. denied,* 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977), a

---

**6.** The four dissenting Justices thought subsection 106(c) sufficiently clear as to represent a permissible congressional abrogation of Eleventh Amendment immunity. They suggested that only those provisions of the code with the required "trigger words" could apply to state entities, and cited as an example § 362(h), which does not contain the requisite language. *Id.* n. 4. Of course that provision of the code was not before the Court in *Hoffman* and so the Court did not have occasion to consider decisions such as *Gardner v. Pennsylvania Dept. of Public Welfare,* 685 F.2d 106 (3d Cir.), *cert. denied,* 459 U.S. 1092, 103 S.Ct. 580, 74 L.Ed.2d 939 (1982).

In *Gardner,* the debtor sought to avoid a judicial lien held by a state agency. The state argued that the lien avoidance provision, § 522(f)(1), did not contain the requisite trigger words and so was inapplicable to state entities due to the Eleventh Amendment. The Court of Appeals rejected this argument by essentially imputing the trigger word "creditor" into the statutory provision and concluding that it was intended to reach all creditor liens via subsection 106(c). A similar argument could be advanced regarding subsection 362(h). Section 362(a) enjoins all creditors, including governmental creditors, by its use of the word "entities." To the extent § 362(h) was intended to afford relief against those who violated the injunction, governmental creditors would fall within its reach. *Gardner.* In light of the *Hoffman* holding, though, the applicability of § 362(h) to governmental creditors, by virtue of § 106(c), would not support an abrogation of Eleventh Amendment immunity. To the extent lien avoidance is classified as equitable relief, though, the actual holding in *Gardner* is unaffected by *Hoffman.*

**7.** Courts are divided post-*Hoffman* whether § 106(c) does not waive federal sovereign immunity as to damage awards in the same way it does not abrogate Eleventh Amendment immunity. *Compare Small Business Administration v. Rinehart,* 887 F.2d 165 (8th Cir.1989) (§ 106(c) does not waive federal sovereign immunity as to monetary awards) *with In re Simmons,* 110 B.R. 72 (Bankr.M.D.Fla.1990) (§ 106(c) waives federal sovereign immunity as to damages); *In re Price,* 103 B.R. 989 (Bankr.N.D.Ill.1989) (same). That issue is not now before me.

decision which predates the current Bankruptcy Code. At that time, the bankruptcy stay arose by virtue of a rule of court. The creditors argued in *Camelia* that contempt could only lie upon violation of a court order and that violation of a rule of court would not justify a finding of civil contempt. *See In re Smith*, 6 C.B.C. 653 (E.D.Va.1975). This argument was rejected in *Camelia* as "exhalting form over substance.... To hold otherwise would be to deprive the courts of the authority necessary to ensure that the rules are obeyed." *Camelia*, 550 F.2d at 53. *See also In re Rubin*, 378 F.2d 104 (3d Cir.1967) (recognizing the possibility that contempt might lie for a stay violation); *Clay v. Waters*, 178 F. 385 (8th Cir.1910) (same); *In re Miller* (statutory injunction under § 362(a) is enforceable by civil contempt).[8]

With the passage of the Bankruptcy Code, the bankruptcy stay arises automatically by virtue of federal statute rather than court rule or court order. Many courts have held, based upon *Camelia* (or similar reasoning), that a willful violation of the statutory stay provision constitutes civil contempt and may be addressed as such. *E.g., In re Computer Communications, Inc.* 824 F.2d 725 (9th Cir.1987); *In re Carter; Borg–Warner Acceptance Corp. v. Hall; In re Miller; In re Greer*, 89 B.R. 757 (Bankr.S.D.Ill.1988); *In re Stephen W. Grosse, P.C.*, 84 B.R. 377 (Bankr. E.D.Pa.1988), *aff'd*, 96 B.R. 29 (E.D.Pa.), *aff'd without op.*, 879 F.2d 857 (3d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 501, 107 L.Ed.2d 504 (1989); *In re Burrow*, 36 B.R. 960 (Bankr.D.Utah 1984); *Matter of DePoy*, 29 B.R. 471 (Bankr.N.D.Ind.1983); *In re Lowry*, 25 B.R. 52 (Bankr.E.D.Mo. 1982). Similarly, courts have protected the

statutory injunction under 11 U.S.C. § 524(a), which arises upon the debtor's receipt of a bankruptcy discharge, by way of contempt power. *E.g., Matter of Rosteck*, 899 F.2d 694 (7th Cir.1990); *In re Elias*, 98 B.R. 332 (N.D.Ill.1989); *In re Wagner*, 87 B.R. 612 (Bankr.C.D.Cal.1988). While there is no statutory provision (equivalent to section 362(h)) providing relief against those who attempt to collect debts that have been discharged, it has been assumed that the power to address such infractions must exist or the statutory injunction is hollow. *E.g., In re Elias.* The same must be true for willful violations of § 362(a) in the absence of § 362(h). *E.g., Camelia; In re Miller.*

## IV.

It therefore may be correct that a governmental entity with Eleventh Amendment immunity that has not filed a proof of claim retains that immunity despite section 362(h). *Hoffman.* It is not correct that such immunity would bar relief under civil contempt power.[9] *See In re Burrow.* That distinction was noted in decisions such as *Hutto v. Finney*, 437 U.S. at 690–91, 98 S.Ct. at 2573–74:

> In exercising their prospective powers under *Ex parte Young* [209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908) ] and *Edelman v. Jordan*, federal courts are not reduced to issuing injunctions against state officers and hoping for compliance. Once issued, an injunction may be enforced.... Civil contempt may also be punished by a remedial fine, which compensates the party who won the injunction for the effects of his opponent's noncompliance.... If a state agency re-

---

8. The recognition that a remedy for willful violations of the stay must exist independent of § 362(h), given the importance of the stay in bankruptcy proceedings, H.R.Rep. No. 595, 95th Cong., 1st Sess. 340 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787 (automatic stay is a "fundamental" bankruptcy principle); *accord In re Atlantic Business & Community Dev. Corp.*, may have caused the Fourth Circuit Court of Appeals to conclude that corporate debtors are entitled to obtain damages for willful violations of the stay, even though § 362(h) refers only to individual debtors. *Budget Service Co. v. Better*

*Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir.1986). *Accord In re Atlantic Business & Community Dev. Corp.* As the Second Circuit just suggested, such an interpretation of subsection 362(h) may not be necessary due to the alternative remedy of civil contempt. *In re Crysen/Montenay Energy Co.*

9. No defendant suggests that this court does not possess civil contempt power. In any event, such power has been upheld in this circuit. *In re Stephen W. Grosse, P.C.*

fuses to adhere to a court order, a financial penalty may be the most effective means of insuring compliance. The principles of federalism that inform Eleventh Amendment Doctrine surely do not require federal courts to enforce their decrees only by sending high state officials to jail. The less intrusive power to impose a fine is properly treated as ancillary to the federal court's power to impose injunctive relief.

In this case, the award of attorney's fees for bad faith served the same purpose as a remedial fine imposed for civil contempt.

(citations and footnote omitted). *Accord Milliken v. Bradley*, 433 U.S. at 267, 97 S.Ct. at 2749–51:

[The prospective compliance exception to Eleventh Amendment immunity] which had its genesis in *Ex Parte Young* ... permits federal courts to enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a direct and substantial impact on the state treasury.

*See Missouri v. Jenkins*, 109 S.Ct. at 2472 (O'Connor, J. concurring and dissenting) ("The Eleventh Amendment does not, of course, provide a State with across-the-board immunity from all monetary relief. Relief that 'serves directly to bring an end to a violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect' on a State's treasury") (*quoting Papasan v. Allain*, 478 U.S. 265, 278, 106 S.Ct. 2932, 2940, 92 L.Ed.2d 209 (1986)); *Fortin v. Commissioner of Massachusetts Dept. of Public Welfare*, 692 F.2d 790, 797–98 (1st Cir.1982); *Nelson v. Steiner*, 279 F.2d 944 (7th Cir.1960) (sovereign immunity does not bar an award of damages due to civil contempt).

■ To the extent that a state governmental entity has recovered its prepetition claim from estate property in violation of the automatic stay, Eleventh Amendment immunity does not preclude the recovery of such funds. The return of such funds to the estate is essential if the fundamental bankruptcy principles embodied in the automatic stay (i.e. debtor relief and creditor equality) are to have meaning. *Accord In re James*. The return of such funds is not merely compensatory to the debtor; it also restores compliance with federal law and vindicates the bankruptcy stay. Thus, courts concerned with sovereign immunity have not invalidated the repayment to the estate of funds collected by governmental creditors in violation of the automatic stay. *Small Business Administration v. Rinehart* (SBA ordered to return setoff); *In re Norton* (IRS ordered to return tax refund improperly setoff); *Farmers Home Administration v. Ketelsen*, 104 B.R. 242, 244 (D.S.D.1988), *aff'd*, 880 F.2d 990 (8th Cir.1989) (improper offset returned); *In re Burrow*. *See In re Academy Answering Service, Inc.*, 100 B.R. at 330 (court refers to IRS's return of funds); *In re Conti* (IRS released lien). *See also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983) (IRS ordered to turnover estate property); *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (actions taken in violation of the stay are void); *In re Ward*, 837 F.2d 124 (3d Cir.1988) (same).

While state governmental creditors are obligated to return funds obtained postpetition in violation of the stay, a closer question concerns their responsibility to pay additional compensatory damages for their violation. To some extent such damages seem like "the award of accrued monetary liability" representing retroactive payment. *Edelman v. Jordan*, 415 U.S. at 664, 94 S.Ct. at 1356. Yet, compensatory damage relief, as a matter of federal power, is permissible against both private entities and states if a finding of civil contempt is warranted. *Hutto v. Finney; Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797 (1911). Damages to compensate for the injury caused by the violation of a court order is a traditional component of civil contempt. *E.g., Petroleos Mexicanos v. Crawford Enterprises, Inc.*, 826 F.2d 392 (5th Cir.1987); *Rickard v. Auto Publisher, Inc.*, 735 F.2d 450 (11th Cir.1984); *McDonald's Corp. v. Victory Investments*, 727 F.2d 82 (3d Cir.1984); *In re Stephen W. Grosse, P.C.*, 84 B.R. at 385.

Furthermore, while legislative history may not be used to support a conclusion that Congress intended to abrogate Eleventh Amendment immunity, *Hoffman,* it may be considered in determining the appropriate reach of civil contempt. In that regard, the legislative history of section 362(a) includes:

> With respect to stays issued under other powers, or the application of the automatic stay, to governmental actions, this section [362] and the other sections mentioned [e.g. 105] are intended to be an express waiver of sovereign immunity of the Federal Government, and an assertion of the bankruptcy power over State governments under the Supremacy Clause notwithstanding a State's sovereign immunity.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 342 (1977), U.S.Code Cong. & Admin.News 1978, p. 6299.

■ In sum, then, there is a long history of stay enforcement by civil contempt; the application of civil contempt has resulted, when appropriate, in the award of compensatory damages. Congress intended, prior to the enactment of § 362(h), that enforcement of the automatic stay could be by civil contempt. *See* Kennedy, *Automatic Stays Under the New Bankruptcy Law,* 12 U.Mich.J.L. Reform 1, 61 (1978). The passage of section 362(h) was not intended to preclude the use of civil contempt. Congress intended that the automatic stay reach states irrespective of any immunity they might have. Eleventh Amendment immunity does not prevent an award of compensatory damages in the context of civil contempt. As a result, I conclude that violations of the automatic stay may result in compensatory damages against state creditors, or state entities acting as agents on behalf of creditors.

## V.

The award of compensatory damages as a civil contempt remedy is not mandatory [10]

and must be based upon a showing of actual damages. *See Hartman v. Lyng,* 884 F.2d 1103 (8th Cir.1989) (contempt found but no damages awarded). In fact, a court has discretion in selecting the appropriate remedy for contempt, *see id.; Rodriguez v. Swank,* 496 F.2d 1110 (7th Cir.), *cert. denied,* 419 U.S. 885, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974); *Nelson v. Steiner,* and should fashion relief in the least intrusive manner necessary to achieve the desired goal. *Spallone v. United States,* —— U.S. ——, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990). The purpose of any civil contempt award for violating the stay is defined by the principles encompassed by the automatic stay.

■ In that light, I shall exercise my discretion and conclude that an appropriate award of damages includes only the recovery of the motor vehicle fine paid by Mr. Szostek to the Philadelphia Traffic Court, and the recovery to Mr. Szostek of wages which were lost when he appeared at traffic court in his final attempt to avoid paying the traffic fine. The wages lost by Mr. Szostek in travelling to and appearing in Traffic Court, which is the basis of his damage claim beyond the $63.00 fine paid, are compensable. *In re Shafer,* 63 B.R. 194 (Bankr.D.Kan.1986) (civil contempt sanctions levied against IRS included debtors' income lost during trial attendance); *Matter of Kalpana Electronics, Inc.,* 58 B.R. 326, 339 (Bankr.E.D.N.Y.1986) (lost wages awarded as sanction for civil contempt); *In re Johnson,* 18 B.R. 755, 757 (Bankr.S.D.Ohio 1982) (creditor's contemptuous actions caused debtor to miss work; loss of wages compensable); *In re Miller,* 10 B.R. 778, 780 (Bankr.D.Md.1981), *aff'd,* 22 B.R. 479 (D.Md.1982) (same). Mr. Szostek credibly testified that he lost three hours of work, at an hourly wage of $10.00, while he personally visited the Traffic Court in an unsuccessful attempt to

10. This is one distinction between relief under civil contempt and relief under § 362(h). The latter statutory provision states that actual damages "shall" be awarded. *But see In re Crysen/Montenay Energy Co.* (court declines to

award damages for the willful violation of the stay in that case but will do so in the future). Another difference is the permissive award of punitive damages under § 362(h).

have his license reinstated.[11] An award of $30.00 is thus appropriate. The damages for emotional distress sought by Ms. Colon, however, may not be compensable under a civil contempt award, *In re Walters,* 868 F.2d 665, 670 (4th Cir.1989), and if they were, such damages would not be appropriate in this instance.

The award of attorney's fees against the Philadelphia Traffic Court as to debtors Szostek and Colon and against PennDot as to debtor Szostek, coupled with a return of the funds received and payment for lost wages, represent sufficient compensation for defendants' actions and validation of federal law. *See In re Mealey* (court imposes fine upon IRS for contempt, as well as costs (including attorney's fees), but declines to award compensatory damages). Here, while the violation of the stay was "willful" in the statutory sense of § 362(h), *see Atlantic Business,* the defendants' conduct arose more out of confusion regarding the applicability of the stay to particular conduct and the unfamiliarity of certain personnel to bankruptcy requirements rather than from a studied desire to disregard the federal statutory injunction. Therefore, no additional fine shall be imposed upon the defendants.[12]

An appropriate order shall be entered pursuant to Bankr.R. 9020(c).

## ORDER

AND NOW, this 7th day of June, 1990, for the reasons stated in the accompanying Memorandum Opinion, it is hereby ORDERED that the defendant Philadelphia Traffic Court shall return to plaintiff Szostek the $63.00 in traffic fines paid to it by that plaintiff, as well as $30.00 representing plaintiff Szostek's lost wages, within 15 days of the date of entry of this order pursuant to Bankr.R. 9020(c).

11. Upon realizing that his arguments were not going to sway the court personnel, Mr. Szostek ultimately paid the traffic fine under protest, while at the court. *In re Colon,* 102 B.R. at 428–29.

12. In light of this conclusion I need not address the various immunity claims offered by the in-

It is further ORDERED that defendants Philadelphia Traffic Court and Commonwealth of Pennsylvania Department of Transportation shall be liable for attorneys fees. The latter is liable only for fees connected with plaintiff Szostek.

Counsel for the plaintiffs shall submit any application for attorney's fees within 30 days of the date of the order. Defendants shall have 30 days to object. If the application is contested, a hearing on the application shall take place at 2:00 P.M. on August 21, 1990 in Courtroom # 1.

dividual defendants. Moreover, as the debtors would receive no greater award if a violation of 11 U.S.C. § 525(a) were established, *see In re Saunders,* or if a violation of 42 U.S.C. § 1983 were demonstrated, I need not address those claims.