In re A & J AUTO SALES, INC., Debtor.

A & J AUTO SALES, INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

Bankruptcy No. 95–12233–MWV.
Adversary No. 95–1212–MWV.

United States Bankruptcy Court,
D. New Hampshire.

April 15, 1997.

Geraldine Karonis, Assistant U.S. Trustee, Manchester, NH, for J. Christopher Marshall.

Diane M. Puckhaber, Rogers & Puckhaber, Concord, NH, for Plaintiff.

Beth A. Westerman, U.S. Dept. of Justice, Washington, DC, for Defendant.

### MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

The Court has before it the complaint of A & J Auto Sales, Inc. ("A & J Auto" or

"Debtor") filed against the United States ("IRS") alleging that the IRS willfully violated 11 U.S.C. § 362, the Bankruptcy Code's automatic stay provision. The Court has previously denied the IRS's motion to dismiss or for summary judgment in an opinion and order dated December 24, 1996. *A & J Auto Sales, Inc. v. United States (In re A & J Auto Sales, Inc.)*, 205 B.R. 676 (Bankr. D.N.H.1996). The Court held that section 362(h) of the Bankruptcy Code cannot be used by corporate debtors, like A & J Auto, to recover damages. Rather, any ability by the Debtor to recover damages would have to flow from the Court's statutory powers under section 105 of the Bankruptcy Code. The parties tried this issue on March 26, 1997, and the Court took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

### FACTS

The Debtor is a corporation involved in the sale and service of automobiles. At the time of its bankruptcy filing the Debtor owed the IRS approximately $95,000. On September 13, 1995, IRS revenue officers, Susan Marston, Boyd Chivers, and Jennifer Bouse, arrived at the Debtor's premises at approximately 12:30 p.m. to conduct collection proceedings. According to the president of the Debtor, Leo Jerzierski, he informed the revenue officers that the Debtor was planning to file bankruptcy, and that the president's son was in fact traveling to the Bankruptcy Court to file the petition. The petition was filed at 2:03 p.m.

Shortly after the revenue officers' arrival, Marston served a previously prepared Notice of Levy on the Debtor. She subsequently filled out a Notice of Seizure, which she served on the Debtor at 1:37 p.m. At some point, prior to the bankruptcy filing, the other revenue officers tagged the Debtor's vehicles with warning stickers. Marston testified that immediately after serving the Notice of Seizure she called a towing company which arrived within ten minutes.

At some point, both Chivers and Marston spoke to Debtor's counsel by telephone who informed them that their actions were violating the automatic stay. Attorney Charles Cleary testified that he spoke to a male agent and informed him that any removal of the cars by the IRS would be a willful violation of the automatic stay which would subject the IRS to sanctions. Attorney Cleary requested that the revenue officers contact Attorney Mae Lew of the IRS's Boston office to discuss the legality of their actions. The revenue officer informed Attorney Cleary that he would telephone his supervisor.

Attorney Cleary testified that later in the afternoon, after the Debtor had filed its bankruptcy petition, he spoke again with an IRS revenue officer who informed him that the IRS was proceeding with its seizure. Again, Attorney Cleary informed the revenue officer that their actions would be a violation of the automatic stay. At trial, Marston confirmed that she spoke with Attorney Cleary who informed her that the IRS was violating the automatic stay. Marston told Attorney Cleary that she disagreed with him, since service of the notices of levy and seizure had been completed prepetition. Marston testified that she also spoke to Attorney Diane Puckhaber, another of the Debtor's attorneys, who requested that Marston telephone Attorney Lew. Instead of contacting Attorney Lew, Marston telephoned her group manager who in turn called the IRS's Special Procedures Office in Portsmouth. Marston was informed that the revenue officers' actions were proper as long as the notices of levy and seizure had been served prepetition. At trial, Marston explained that she did not call Attorney Lew because that is not IRS procedure. Attorney Lew agreed that inquiries regarding the legality of collection actions come from the Special Procedures Office, not from revenue officers directly. According to Attorney Lew, it would be "unusual" to receive such a call from a revenue officer.

After confirming the propriety of their actions with their supervisor, the revenue agents continued removing the vehicles from the Debtor's premises to a more secure, fenced location. Approximately eight days

later, the IRS returned the vehicles to the Debtor pursuant to the Court's turnover order of September 20, 1995.

### DISCUSSION

■ The Debtor argues that the actions of the IRS violate the automatic stay. The Court agrees. In *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 209, 103 S.Ct. 2309, 2315–16, 76 L.Ed.2d 515 (1983), the United States Supreme Court explained that a "reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization" assuming that the seizure did not transfer ownership of the property seized. The Supreme Court further explained that "[t]he Internal Revenue Code's levy and seizure provisions, 26 U.S.C. §§ 6331 and 6332, ... are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody." *Id.* at 210–11, 103 S.Ct. at 2316 (citations omitted). In accordance with this reasoning, the Court finds that the vehicles of A & J Auto, seized by the IRS prepetition pursuant to section 6331 of the Internal Revenue Code, became property of the Debtor's reorganization estate within the meaning of section 541 upon the filing of the Debtor's Chapter 11 petition.

■ Section 362(a)(3) of the Bankruptcy Code provides that a bankruptcy petition "operates as a stay, applicable to all entities, of ... any action to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." The IRS's actions in removing the cars from the Debtor's premises and retaining them postpetition were actions "to obtain possession of property of the estate or to exercise control over property of the estate." *See California Employment Dev. Dep't v. Taxel (In re Del Mission Ltd.)*, 98 F.3d 1147, 1151 (9th Cir.1996) (holding that knowing retention of estate property violates the automatic stay of section 362(a)(3)). The IRS's actions in this case constitute a willful violation of the automatic stay because: (1) at the time of the vehicles' removal, the IRS knew that the Debtor had filed bankruptcy and the automatic stay applied; and (2) the revenue officers intended to obtain possession of the vehicles, the acts which violated the stay. The Court could alternatively find that the IRS willfully violated section 362(a)(6) which provides that a bankruptcy petition "operates as a stay, applicable to all entities, of ... any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." In removing the Debtor's vehicles postpetition, the IRS was attempting to collect the tax debt owed by the Debtor, a claim which arose prepetition. Because the IRS had knowledge of the automatic stay and the revenue officers intended to remove the vehicles as part of its collection proceedings, the IRS's actions constituted a willful violation of section 362(a)(6). Thus, if A & J Auto were an individual and not a corporation, the Debtor would be entitled to actual damages under section 362(h) for the IRS's violation of section 362(a)(3) or, alternatively, for its violation of section 362(a)(6). The Debtor, however, is a corporation, and, therefore, the Court must determine whether the Debtor is entitled to damages under section 105.

■■ Section 105(a) grants statutory contempt powers in the bankruptcy context and states, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provision of this title." Three circuit courts of appeals have acknowledged that corporate debtors may recover damages for stay violations through the civil contempt power of section 105. *Jove Eng'g. Inc. v. Internal Revenue Serv.*, 92 F.3d 1539, 1553–54 (11th Cir.1996); *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 620 (9th Cir.1993); and *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 186–87 (2d Cir.1990). In fact, courts used the civil contempt power of section 105 to award damages for violations of the automatic stay prior to the enactment of section 362(h) in 1984, *see Chateaugay*, 920 F.2d at 186; *In re Colon v. Hart*, 114 B.R. 890, 895 (Bankr.E.D.Pa. 1990) ("Before the enactment of section 362(h), courts viewed a violation of the bankruptcy stay as though it were the violation of a court order which might be redressed by

civil contempt."), and courts have continued this practice with respect to corporate debtors since its enactment, *see Elder–Beerman Stores Corp. v. Thomasville Furniture Indus., Inc. (In re Elder–Beerman Stores Corp.),* 206 B.R. 142, 148–49 (Bankr.S.D.Ohio 1997); *Colon,* 114 B.R. at 898.

 In order to award damages under section 105, the Court must find only that the ordinary standards of civil contempt have been met, which requires a showing that a definite and specific order of the court be knowingly violated, Thus, unlike a motion under section 362(h), in order to find contempt the Debtor must show that the IRS had actual knowledge of the stay. *See Elder–Beerman,* 206 B.R. at 152. The Court notes that the decision whether or not to award damages for contempt is discretionary and not mandatory as it is under section 362(h). *Jove,* 92 F.3d at 1552; *Elder–Beerman,* 206 B.R. at 153–54.

 Although the Court finds that the IRS had actual knowledge of the automatic stay and willfully violated it as detailed above, the Court declines to award damages for civil contempt for several reasons. First, the Court finds that the IRS's removal of the Debtor's vehicles was done in good faith and not from any desire to disregard the statutory injunction contained in section 362. All of the IRS representatives testified that the revenue officers acted in accordance with established IRS procedure. When faced with the question as to whether their actions violated the automatic stay, the revenue officers contacted their supervisor to determine the propriety of their actions. The supervisor informed them that their actions complied with the requirements of the automatic stay. Although it is true that the revenue officers failed to contact IRS counsel, despite several requests by, the Debtor's counsel to do so, this failure does not lessen the revenue officers' good faith in attempting to determine whether they were, in fact, violating the automatic stay. It is assumed that they *all* will learn from their mistake.

Second, the Court finds that by removing the vehicles, the revenue officers were acting in accordance with IRS policy which requires that property capable of removal, such as an automobile, be removed. Exhibit No. 107, *Internal Revenue Manual* at ¶ 334.3. Marston, Attorney Lew, and Charles Arcidiacono, another representative of the IRS, all testified that the IRS is responsible for vehicles once seized and that in order to secure and protect these assets, vehicles should be towed to a secure area. Marston testified that the Debtor's lot was not fenced, and, accordingly, she felt obligated to remove the vehicles.

Third, the Debtor failed to present hard evidence as to the actual damages it sustained as a result of the IRS's actions. The Debtor stated in its answers to the IRS's interrogatories that calculating lost revenue and lost sales would be "purely speculation." The Debtor explained that the damage was irreparable and could "not be measured in dollars and cents." At trial, the Debtor offered some testimony that in towing the cars the IRS had damaged the bumper of a Saab automobile, which cost $300 to repair, the IRS had damaged the running gear of a 1986 Isuzu Trooper in attempting to tow it, resulting in a severe reduction in its sales price, and that six car batteries had been destroyed and were replaced. Upon cross-examination, however, the Debtor's president acknowledged that the Saab had been sold with the damaged bumper, that he sometimes sold cars for less than retail, and that he had recharged, rather than purchased, some of the batteries. The Debtor also asserted it has incurred legal expense as a result of the IRS's actions. The Court would find that the award of attorney's fees is not warranted in this case.

 For the above reasons, the complaint of the Debtor is denied. The Court, however, will use its equitable powers under section 105 to prohibit the IRS from recovering from the Debtor any of the costs it incurred in its seizure and return of the Debtor's vehicles. In light of its ruling, the Court finds it is unnecessary to address the other arguments made by the IRS.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Pro-

cedure 7052. The Court will issue a final judgment consistent with this opinion.